**JAMS ARBITRATION**

| COMPUTER FORENSIC SERVICES, LLC and 360 SECURITY SERVICES, LLC,<br><br>Claimants,<br>v.<br><br>BRAUNHAGEY & BORDEN LLC,<br><br>Respondent. | JAMS Case No. ______________<br><br>**DEMAND FOR ARBITRATION** |
|---|---|

Claimants Computer Forensic Services, Inc., and 360 Security Services, LLC, for their Demand for Arbitration against Respondent BraunHagey & Borden LLC, states and alleges as follows:

**NATURE OF THE ACTION**

1. This dispute concerns non-payment by BraunHagey & Borden LLC ("BraunHagey"), of certain invoices from Computer Forensic Services, LLC ("CFS") and 360 Security Services, LLC ("360"), in connection with computer forensic and document digitizing services.

2. BraunHagey is a law firm that was appointed to represent a class in a currently-pending lawsuit captioned *Spectrum Scientifics v. Celestron*, Case No. 5:20-cv-03642-EJD (N.D. Cal.) ("the Spectrum litigation"). In order to obtain information from electronic and physical (paper) sources related to the Spectrum litigation, BraunHagey retained CFS/360 on May 27, 2021.

DEFENDANT'S
EXHIBIT
G

3. The parties entered into a written agreement, with BraunHagey retaining both CFS and 360 jointly. A true and correct copy of the agreement is attached hereto as Exhibit A. ("CFS/360 Agreement")

4. 360 was retained to collect and scan (i.e., digitize) thousands of pages of physical, hard copy documents. For this work, BraunHagey agreed to 360's fees, including a rate of 20 cents per page for document digitizing. 360 traveled, retrieved the documents, and communicated with BraunHagey and the documents' custodian(s) in connection with that work. 360 remitted an invoice for these services on July 27, 2021. On August 7, 2021, 360 provided its work-product in the form of the scanned documents to BraunHagey.

5. BraunHagey has not disputed, nor has it paid 360's invoice, which totals $11,181.60. The bulk of this invoice represents the 20 cents per page flat rate. 360 digitized 48,483 pages of documents (48,483 pages x 20 cents = $9,696.60).

6. CFS was retained to forensically preserve, identify and retrieve documents from electronic sources. CFS preserved electronic information from a myriad of sources, including twenty (20) original devices (phones and hard drives), as well as online accounts.

7. CFS subsequently searched the data and compiled statistics and file inventories from the sources it forensically captured from the electronic sources. After completing a substantial amount of searching, BraunHagey requested that CFS provide its work to its e-discovery vendor for it to load into a review tool. CFS began uploading data to BraunHagey's specified e-discovery vendor on Sunday, June 27, 2021.

8. With respect to the CFS invoices, BraunHagey has not paid a dime of the $33,119.80 due. More than two months after CFS submitted its work product and its invoices, BraunHagey developed the position that it is entitled to pay less than the invoice amount because CFS charged for "computer time."

9. BraunHagey has paid $0 toward that balance owed to CFS/360, notwithstanding that it has received the deliverables of CFS's and 360's work.

10. Through this Arbitration, CFS/360 seeks an award of damages in the amount of $136,635.94 owed to it.

11. Through this arbitration, CFS/360 together seek an award for their time and expenses preparing for this Arbitration, including reasonable attorneys' fees, as provided by the parties' contract.

**PARTIES**

12. Claimant CFS is a Minnesota limited liability corporation with a principal place of business of 800 Hennepin Ave., Fifth Floor, Minneapolis, Minnesota 55403. CFS provides a variety of services relating to computer forensics, including expert digital evidence services, forensic services, information security support, discovery in litigation, law enforcement support, and education.

13. Claimant 360 is a is a Minnesota limited liability corporation with a principal place of business of 800 Hennepin Ave., Fifth Floor, Minneapolis, Minnesota 55403. 360 provides private investigation, executive protection, and forensic accounting services.

14. CFS predates 360. CFS and 360 are sister companies. CFS performs electronic investigations, digital forensics, and e-discovery services while 360 performs more traditional investigative services, like forensic accounting and document scanning. In this case, CFS handled the e-discovery services for BraunHagey and 360 handled the document scanning.

15. Respondent BraunHagey is a California limited liability partnership with a principal place of business of 351 California Street, 10th Floor, San Francisco, CA 94104. BraunHagey is a law firm.

**AGREEMENT TO ARBITRATE**

16. The Parties are properly in arbitration pursuant to the CFS/360 Agreement, which provides in relevant part:

> Conflicts and Arbitration: 360-CFS reserves the right to withdraw from this engagement if there is a material disagreement between 360-CFS and B&B relating to 360-CFS's services. Any controversy, claim, or dispute arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation, or validity thereof, or relating otherwise to the firm's representation of Client, including the determination of the scope, jurisdiction or applicability of this agreement to arbitrate, shall be determined through binding arbitration in Minnesota by a sole arbitrator. The prevailing party in any arbitration or litigation will be entitled to recover all attorneys' fees (including if 360-CFS is the prevailing party, the value of the time of all professionals of our firm who perform services in connection with the dispute, computed at their normal billing rates), all experts' fees and expenses and all costs (whether or not these costs would be recoverable under the Minnesota Code of Civil Procedure or other applicable law) that may be incurred in obtaining or collecting any judgment and/or arbitration award, in addition to any other relief to which that party may be entitled. In agreeing to binding arbitration, B&B and 360-CFS voluntarily relinquish important constitutional rights to trial by judge or jury, as well as rights to appeal. B&B is advised that it has the right to have an independent lawyer of its choice review this arbitration provision, and this entire Agreement, prior to signing this Agreement. B&B agrees that, any and all damages sought against 360-CFS are solely limited to any amounts paid to 360-CFS by B&B on the particular matter out of which the dispute has arisen.

(Exhibit A at pp. 3-4.)

17. On December 10, 2021, BraunHagey reiterated in a communication to CFS its agreement to arbitrate before JAMS.

## FACTS

### I. BraunHagey's involvement in litigation and retention of CFS/360

18. BraunHagey represents Plaintiffs in the Spectrum litigation. On June 1, 2021, BraunHagey engaged CFS/360 to provide digital forensic and document scanning services.

19. One service CFS provides is analysis of digital media. Before CFS can analyze any digital media, CFS must preserve it.

20. In connection with the Spectrum litigation, BraunHagey and/or its client identified twenty (20) electronic devices for forensic preservation.

21. A CFS employee travelled onsite to the client's location (Bethel, Minnesota) to pick-up the devices. The forensic preservation process creates a duplicate copy of the devices and is an accurate representation of the data contained on them. Table 1 below provides a summary of the devices received, and whether CFS was able to extract data from them.

| Device Description | Serial Number | Device Accessible |
|---|---|---|
| iMac 20in 2.16 | QP7090X7VUW | Yes |
| Quantum FireBall SE IDE | 334820362479 | Yes |
| IBM DORS-32160 SCSI | 85G3683E596700S61 | Yes |
| Conner SFP1080S SCSI | EX988X6 | No |
| Quantum ProDrive LPS SCSI | 94641013 | No |
| Quantum ProDrive ELS SCSI | 9372103B3 | No |

| | | |
|---|---|---|
| Quantum ProDrive ELS SCSI | 93209033 | No |
| Quantum ProDrive LPS SCSI | 142305410899 | No |
| Mad Dog External USB 2.0 | N/A | Yes |
| WD Caviar WD400 | WMAMA43_209 | No |
| Quantum ProDrive LPS SCSI | MK1030VH039C | No |
| Unknown Drive | Unknown | No |
| MacBookPro | C02NH2JCG3QK | Yes |
| DELL PowerEdge 6300 Server | Service Tag: HGV5A | Yes |
| iPhone SE A2275 | F17CQ9KZPLJY | Yes |
| iPhone 6 A1549 | C7JNTRL9G5MG | Yes |
| HP Prodesk 400 Tower | MXL440367X | Yes |
| IBM M Pro Tower | 23FY541 | Yes |
| Apple (Macintosh) Centris 650 Tower | FC338DOGCC5 | Yes |

*Table 1 Device Listing*

22. The inaccessible devices were physically damaged, thus thwarting attempts to recover data from them. BraunHagey advised that several of the devices were damaged in a fire.

23. In addition to the electronic sources outlined in *Table 1*, BraunHagey identified 48,483 pages of paper documents. These documents were subsequently scanned, enhanced, and produced to BraunHagey by 360.

24. BraunHagey, despite not disputing 360's work in digitizing these 48,483 pages, has not remitted payment.

25. Following the successful preservation of the accessible devices outlined in *Table 1*, CFS provided an estimate to BraunHagey on or around June 14, 2021. The estimate was for 6-10 hours per device to run approximately nineteen (19) search terms

across the data set, and then produce responsive materials to BraunHagey's Relativity provider.[1] Based on the number of accessible devices, this estimate totaled between $21,450 and $35,750. CFS's total billing, including communications, analysis (e.g., search terms), data exports, email account preservations, iPhone repairs, and preservation costs, totaled $33,119.80.

26. Because the loss of data could have potentially prejudiced the interests of BraunHagey in the Spectrum litigation and because CFS was never authorized to purge the evidentiary data, CFS continues to host it despite BraunHagey's non-payment. Joseph Lanterman, CFS' Director of Finance, notified Hunter Thomson, an attorney at BraunHagey, of the pending data hosting charges on September 23, 2021. Joseph Lanterman's email stated, "Please note that CFS continues to host a significant amount of data (the forensic images) on this project. We will need to begin billing for this hosting starting Oct. 1, 2021." Mr. Thomson never responded to this email.

27. On November 17, 2021, Ron Fisher, a Partner at BraunHagey, advised via email that CFS must continue to store the data and could not destroy the property, despite its refusal to pay for the same.

28. Consequently, charges for hosting continue to accrue. In total, CFS has preserved approximately 3,141 GB of data. At the agreed upon rate in the CFS/360 Agreement ($3.45 per GB per month), this amounts to $361.20 per diem. Approximately

---

[1] Relativity is a popular document review platform. BraunHagey asked CFS to extract, organize, and put the data in a format that is compatible with Relativity, which it did.

222 days have passed since October 1, 2021, therefore resulting in data hosting charges of $84,882.82 from October 1, 2021 to May 24, 2022.

29. Additionally, CFS has spent considerable time preparing this demand, previous letters, and responding to BraunHagey's breach of contract. Per the terms of the CFS/360 Agreement, CFS/360 is permitted to recover "the value of the time of all professionals of our firm who perform services in connection with the dispute, computed at their normal billing rates." (*See* Exhibit A, § Conflicts and Arbitration)

30. Interest has also accrued on the outstanding invoices at a rate of 1.8% per month past due. (*Id.*, § Late Payment/Non-payment.) As of May 24, 2022, this equates to $5,633.59 of interest charges for CFS' invoices and $1,818.13 for 360's invoice (total $7,451.71).

31. Both interest charges and data hosting fees will continue to accrue on a per diem basis until this dispute is resolved.

**III. BraunHagey refuses to pay CFS pursuant to the engagement agreement.**

32. CFS's Director of Finance, Joseph Lanterman, sent four (4) invoices on behalf of CFS and 360 to Hunter Thomson, an attorney at BraunHagey, on July 7, 2021, July 27, 2021, August 4, 2021, and September 23, 2021.

33. On August 4, 2021, CFS sent invoices containing additional billing information to Thomson.

34. CFS also followed up on the outstanding invoices on August 30, 2021.

35. On September 3, 2021, Thomson responded to CFS's August 30, 2021 email saying "Got it. We'll circle back with you on Tuesday." This promised follow-up by BraunHagey never occurred.

36. On October 8, 2021, CFS Chief Technology Officer Mark Lanterman followed up in an email to Matthew Borden and Hunter Thomson, attorneys at BraunHagey, asking "Why haven't [CFS and 360's] invoices been paid."

37. On October 14, 2021, Mark Lanterman followed up again informing Borden and Thomson that "[Mark Lanterman] has left messages for both of you. If I don't hear from you this week, I intend to escalate. I would appreciate a response."

38. On October 14, 2021, BraunHagey finally responded, stating:

> Hunter has been in consistent contact with Joe Lanterman at your firm regarding these issues. […] The concern we have with the invoices is that Joe has confirmed that ComputerForensics has billed numerous hours that its computers were processing data as "analyst time." Billing computer time as analyst time is not industry standard, and our retainer agreement provides for payment for actual analyst time, not computer time. We are additionally concerned about the volume of hours billed without success in recovering any data, particularly when our subsequent vendor was able to recover data relatively quickly.

39. The CFS/360 Agreement provides that any billing dispute must be received in writing within a 15-day period.

40. BraunHagey did not provide any written dispute of these charges until October 14, 2021. (*See supra* ¶ 38). This was approximately 99 days after CFS' first invoice, 71 days after the second CFS invoice, and 79 days after 360's invoice.

41. BraunHagey agreed in the CFS/360 Agreement that "that if no disputative writing is received by 360-CFS within the 15-day period then all amounts under an invoice are due and owed to 360-CFS." (*See* Exhibit A, § Invoices).

42. BraunHagey accepted the invoices when it did not send a written dispute within 15 days.

43. Furthermore, BraunHagey has not disputed the amounts owed to 360.

44. The outstanding balance owed by BraunHagey to CFS/360 as of May 24, 2022 is $136,635.94.

45. BraunHagey has refused to pay any money toward its balances with CFS or 360 as of the time of the service of this demand.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

46. CFS/360 restates and realleges all of the preceding paragraphs of this Demand for Arbitration as though set forth in full at this place.

47. CFS/360 and BraunHagey agreed that CFS/360 would provide expert forensic and other services to BraunHagey, and that BraunHagey would pay CFS/360 for these services pursuant to the CFS/360 Agreement.

48. CFS completed its performance obligations by preserving and subsequently producing data from numerous electronic devices to BraunHagey and its Relativity vendor.

49. 360 completed its performance obligations by digitizing 48,483 pages of documents and producing them to BraunHagey.

50. BraunHagey has not paid the $136,635.94 it owes CFS/360.

51. Because it has not paid the $136,635.94 it owes CFS/360, BraunHagey has materially breached its contract with CFS and 360.

52. Because CFS has been forced to initiate this proceeding, CFS is also owed its costs associated with this arbitration, which continue to accrue.

53. CFS and 360 have been damaged in an amount in excess of $136,635.94 by BraunHagey's breach.

**SECOND CLAIM FOR RELIEF**
**Account Stated**

54. CFS/360 restates and realleges all of the preceding paragraphs of this Demand for Arbitration as though set forth in full at this place.

55. CFS/360 rendered invoices to BraunHagey on July 7, 2021, July 27, 2021, August 4, 2021, and September 23, 2021, totaling $44,301.40.

56. BraunHagey retained the invoices from CFS and 360 for 99 and 79 days, respectively, before raising any objections to these invoices.

57. Because BraunHagey's retained the accounting from CFS/360 for an unreasonably long time without objecting, BraunHagey has assented to that accounting.

58. Based on CFS/360's statements of account, BraunHagey should be ordered to pay $44,301.40. Data hosting and interest continue to accumulate on a per diem basis.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**

59. CFS/360 restates and realleges all of the preceding paragraphs of this Demand for Arbitration as though set forth in full at this place.

60. Because BraunHagey has failed to pay CFS/360 for the services provided to it by CFS/360, it knowingly and wrongfully received services from CFS/360 for which it has not paid.

61. It would be unjust for BraunHagey to retain that benefit to CFS/360's detriment.

62. BraunHagey has been unjustly enriched in an amount in excess of $136,635.94.

**PRAYER FOR RELIEF**

**WHEREFORE**, CFS and 360 respectfully request that the Arbitrator:

1. Enter an award requiring BraunHagey to pay the outstanding balances it owes CFS/360 for services provided to BraunHagey in the amount of $136,635.94, plus accruing data hosting and interest charges;
2. Award CFS/360 its costs associated with this Arbitration;
3. Award any and all further and appropriate relief that is equitable under the circumstances; and
4. Award its reasonable attorneys' fees and costs.

DATED: May 31, 2022

**MADEL PA**

By: *s/Cassandra B. Merrick*
Christopher W. Madel (230297)
Cassandra B. Merrick (396372)

800 Pence Building
800 Hennepin Avenue
Minneapolis, MN 55403
Telephone: 612-605-0630
Fax: 612-326-9990
cmadel@madellaw.com
cmerrick@madellaw.com

*Attorneys for Claimants*

# EXHIBIT A

 

800 Hennepin Ave, 5th Floor, Minneapolis, MN 55403
www.compforensics.com / www.360security.services
(952) 924-9920 / (952) 777-6360

*Via* Email Only (borden@braunhagey.com)

Engagement Letter

Matthew Borden, Attorney

BraunHagey & Borden LLP

351 California Street, 10th Floor

San Francisco, CA 94104

May 27, 2021

Re: Spectrum Scientifics v. Celestron

Engagement: Computer Forensic Services, LLC ("CFS") and 360 Security Services, LLC ("360") (jointly "360-CFS") agree to be engaged by BraunHagey & Borden LLP ("B&B") to provide digital forensic analysis, professional investigative services, and other services, as requested. 360-CFS agrees to provide services upon the return of B&B's executed copy of this agreement and any requested retainer deposit. All requests for services that are performed after the offer of this agreement signify acceptance of the entire agreement, regardless if an executed agreement and/or retainer deposit are returned to 360-CFS.

Confidentiality: 360-CFS will maintain the confidentiality of all project information B&B entrusts to the custody of 360-CFS. 360-CFS will not disclose any confidential information obtained during the course of providing services for B&B to any third party, except as may be required by law or court order. B&B will immediately provide 360-CFS with any relevant order or stipulation regarding the handling of any confidential information. Confidentiality will not survive a breach of this agreement by B&B.

Services and Pricing

General Rates: 360-CFS charges for the time dedicated to the engagement on an hourly basis. The current hourly rates are set forth as follows: 360 Investigators, $150 per hour; Forensic Analysts,

800 Hennepin Ave, 5th Floor, Minneapolis, MN 55403
www.compforensics.com / www.360security.services
(952) 924-9920 / (952) 777-6360

$325 per hour; Mark Lanterman, $425 per hour. The stated rates also apply to work performed outside of CFS' offices, including travel time, and internal peer review of work product.

Project Specific Pricing: 360-CFS will charge a not-to-exceed cost for document scanning services of $0.20 per page. Additionally, 360-CFS will charge a flat fee of $300 for the secure transfer of documents and hard drives from the storage facility to 360-CFS's office.

Preservation Fees: CFS charges a flat fee for the forensic preservation of digital media/electronic devices. Preservation includes the creation of a proprietary forensically sound bit-stream forensic image, and verification. The flat fee amount is dependent upon the media type and size. A brief listing of current preservation rates are as follows: for computer/laptop hard drives, $300-$750 per device, and for mobile devices (smartphones, tablets, etc.), $575 per device.

Data Hosting: A monthly data hosting fee is assessed to the engagement. The data hosting fee is calculated based on the volume of data created by or provided to 360-CFS, to include forensic images. The current data hosting rate is $3.45 per GB of data per month. Data hosting charges will accrue immediately upon creation or receipt of project data. Data hosting may be terminated at any time after the start of data hosting invoicing. Termination is only effective if received in writing. All unpaid data hosting charges are due immediately upon termination. B&B understands and agrees to pay all data hosting charges.

Testimony: Oral testimony, written reports, affidavits, letters, and other expert witness services are provided at the following rates: 360, $425 per hour; CFS, $625 per hour. A minimum reservation charge of 8-hours will be assessed for deposition and testimony preparation, and appearance. A minimum reservation charge will not apply for other expert witness services. 360-CFS requires a 5-day notice of cancellation for performance of any and all requested or reserved expert witness services.

Expedited Rates: In situations where work requests must be expedited, or performed outside of 360-CFS' normal business hours (M-F, 9AM-5PM CST), including holidays and weekends, 360-CFS will charge 1.5x the applicable hourly rate.

Expenses: B&B acknowledges 360-CFS may advance reasonable and necessary out-of-pocket expenses required for the completion of the project. B&B will pay all such reasonable and necessary out-of-pocket expenses incurred by 360-CFS to complete the project.

800 Hennepin Ave, 5th Floor, Minneapolis, MN 55403
www.compforensics.com / www.360security.services
(952) 924-9920 / (952) 777-6360

General Terms and Conditions

Estimates: B&B acknowledges that the nature of the work performed by 360-CFS is complex and time consuming, and that any cost estimate, retainer or quote furnished by 360-CFS is not a cap on the amount B&B may be charged for the project.

Invoices: 360-CFS will periodically submit invoices to B&B for any and all services performed or costs incurred on the project. 360-CFS reserves the right to withhold all productions until after payment for services is received. 360-CFS invoices are due upon receipt. 360-CFS must be notified in writing of any and all disputes regarding an invoice within 15 days of the date of the disputed invoice. 360-CFS billing records are the default record establishing an invoice. B&B acknowledges that if no disputative writing is received by 360-CFS within the 15-day period then all amounts under an invoice are due and owed to 360-CFS.

Late Payment/Non-payment: Invoices not paid promptly are subject to a late fee of 1.8% of the amount of the invoice per month for each month the invoice remains unpaid. 360-CFS reserves the right to cease work on the project or any other project on which 360-CFS is providing services to B&B if an invoice remains unpaid for a period of 30 days. 360-CFS reserves the right to withdraw from this engagement if its invoices remain unpaid for a period of 45 days. 360-CFS reserves the right to declare as abandoned any and all data and devices a customer has placed in our custody for a period greater than 60 days.

Authority to Submit Data and Indemnification: B&B acknowledges its authority to submit data, materials, equipment, or information to 360-CFS. 360-CFS will exercise necessary care to secure and protect from physical damage or destruction the data, materials, equipment and information provided by B&B. B&B agrees to hold harmless and indemnify 360-CFS, its officers, its employees and agents for any and all claims of physical damage or destruction of any and all data, materials, equipment and information provided to 360-CFS by B&B except if such claim is due to the gross negligence of 360-CFS.

Conflicts and Arbitration: 360-CFS reserves the right to withdraw from this engagement if there is a material disagreement between 360-CFS and B&B relating to 360-CFS's services. Any controversy, claim, or dispute arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation, or validity thereof, or relating otherwise to the firm's representation of Client, including the determination of the scope, jurisdiction or applicability of this agreement to arbitrate, shall be determined through binding arbitration in Minnesota by a sole arbitrator. The prevailing party in any arbitration or litigation will be entitled to recover all attorneys' fees (including if 360-CFS is the prevailing party, the value of the time of all professionals of our firm who perform services in

800 Hennepin Ave, 5th Floor, Minneapolis, MN 55403
www.compforensics.com / www.360security.services
(952) 924-9920 / (952) 777-6360

connection with the dispute, computed at their normal billing rates), all experts' fees and expenses and all costs (whether or not these costs would be recoverable under the Minnesota Code of Civil Procedure or other applicable law) that may be incurred in obtaining or collecting any judgment and/or arbitration award, in addition to any other relief to which that party may be entitled. In agreeing to binding arbitration, B&B and 360-CFS voluntarily relinquish important constitutional rights to trial by judge or jury, as well as rights to appeal. B&B is advised that it has the right to have an independent lawyer of its choice review this arbitration provision, and this entire Agreement, prior to signing this Agreement. B&B agrees that, any and all damages sought against 360-CFS are solely limited to any amounts paid to 360-CFS by B&B on the particular matter out of which the dispute has arisen.

No Attorney-Client Relationship: During the course of the engagement B&B may work with licensed attorneys who are employees of 360-CFS. All material or oral representations that are provided by 360-CFS are for information purposes only and do not constitute legal advice. B&B understands that this agreement does not create an attorney-client relationship, nor provide a substitute for obtaining legal advice from a qualified attorney.

Superseding Agreement: This agreement is the entire engagement agreement between 360-CFS and BraunHagey & Borden LLP. The parties will abide by the prices, terms and conditions set out in this agreement. This agreement supersedes all other oral and written agreements between the parties regarding this project. This agreement can only be modified in writing.

Signatures

Please acknowledge by signature in the space provided below that the foregoing accurately sets forth the prices, terms and conditions, of our agreement.

This Agreement is duly executed by the duly authorized representatives of the parties as set forth below:

| Computer Forensic Services, LLC | BraunHagey & Borden LLP |
|---|---|
| [signature] | Matt Borden |
| Mark Lanterman, Chief Technology Officer | Matthew Borden, Attorney |
| Date: 6/1/2021 | Date: 6/1/2021 |

800 Hennepin Ave, 5th Floor, Minneapolis, MN 55403
www.compforensics.com / www.360security.services
(952) 924-9920 / (952) 777-6360

360 Security Services, LLC

Michael Olson, Chief Executive Officer
Date: 6/1/2021